IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MARIA U.,[1] | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 5:22-CV-299-H-BQ |
| | § |
| COMMISSIONER OF SOCIAL SECURITY, | § |
| | § |
| Defendant. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Maria U. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her application for supplemental security income. Under *Special Order 3-251*, the United States District Judge automatically referred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 5. The parties did not unanimously consent to proceed before a magistrate judge. After carefully considering the parties' briefing and arguments, the administrative record, and applicable law, the undersigned recommends that the United States District Judge affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

### I.     Statement of the Case

Plaintiff filed applications for supplemental security income and disability insurance benefits, alleging a disability onset date of November 20, 2019.[2] *See* Tr. 37, 164, 169. The Social Security Administration (SSA) denied her applications on January 20, 2021, and again upon

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

[2] During Plaintiff's hearing before the ALJ, the parties agreed to amend the alleged onset date to November 20, 2019, i.e., the application date, but the ALJ's opinion still reflects February 7, 2016, as the onset date. *See* Tr. 12, 37.

reconsideration on September 28, 2021. Tr. 53, 69, 95. Plaintiff then requested a hearing before an administrative law judge (ALJ). Tr. 98–99. Represented by counsel, Plaintiff appeared and testified telephonically before the ALJ on May 12, 2022. Tr. 31–52. A vocational expert (VE) also provided testimony at the hearing. *Id.*

The ALJ determined on June 6, 2022, that Plaintiff was not disabled because she is capable of performing past relevant work. Tr. 15–16, 21, 24. The Appeals Council denied Plaintiff's request for review. Tr. 1. Consequently, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.   Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2020); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). If substantial

evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2020); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2012); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.    Facts

Plaintiff claims she became disabled on November 20, 2019, due to myriad health issues. *See* Tr. 12, 15. Plaintiff has a high school education and previous work history as a housekeeper and commercial cleaner. Tr. 22, 36.

At step one, the ALJ found Plaintiff has not engaged in "substantial gainful activity" since November 20, 2019—i.e., the application date. Tr. 14–15. The ALJ determined at step two that Plaintiff has the following severe impairments: "coronary artery disease; Type 2 diabetes mellitus with diabetic polyneuropathy; bilateral lower extremity edema; asthma; arteriosclerotic heart disease; congestive heart failure; tricuspid regurgitation; and ischemic heart disease." Tr. 15 (emphasis omitted). Despite the existence of severe impairments, the ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meet or equal the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15–16.

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff can "perform light work" as modified:

> [S]he can frequently kneel, crouch, stoop, balance, and crawl . . . and can frequently climb stairs and ramps. She can occasionally climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can have occasional concentrated exposure to atmospheric conditions . . . . She can tolerate occasional exposure to vibration. In addition, she can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions. She will be off task 10% of the workday.

Tr. 16 (emphasis omitted). Relying on the testimony of a VE, the ALJ concluded that Plaintiff can perform past relevant work as a housekeeping cleaner and commercial or institutional cleaner. Tr. 21–23. The VE testified that an individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of these jobs at the light level. Tr. 22. Accordingly, the ALJ determined at step five that although Plaintiff could not "perform the full range of light work," Plaintiff is not disabled. Tr. 23.

Plaintiff raises two points of error on appeal: (1) the ALJ's RFC determination "did not include walker-related limitations" despite having a prescription for such medical device; and (2) "[t]he ALJ failed to consider the 'total limiting effects' of Plaintiff's severe impairments,

namely, the fatigue that requires multiple naps throughout the day." Pl.'s Br. 3, ECF No. 16 (emphasis omitted). The Court examines her arguments below.

## IV. Discussion

### A. The Parties' Positions

Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence because the medical evidence reflects that she is more limited than the ALJ concluded. *Id.* at 4–8. In October 2020, Bradon Loya, M.D., conducted a consultative examination and "opined that she would have limitations in standing and walking due to shortness of breath and fatigue." *Id.* at 5. Plaintiff contends that while the ALJ credited this opinion as "consistent with the overall evidence and somewhat persuasive," he failed to explain how these limitations, "which plainly contradict the ALJ's RFC, [were] . . . the only part of the report he did not credit." *Id.* at 16. Plaintiff asserts that because both Dr. Loya's opinion and Plaintiff's self-described limitations are consistent with significant standing/walking limitations, the ALJ's opinion is not consistent with the finding that Plaintiff can perform modified light work. *Id.* By consequence, Plaintiff argues that because the VE's testimony is "based on a defective . . . RFC," the testimony "cannot, as a matter of law, be substantial evidence supporting [the] ALJ's" denial. *Id.* at 18–19.

Plaintiff further avers that she requires a walker for balance and mobility, demonstrating her significant limitations to lift and carry objects, and walk or stand up to six hours a day. *Id.* at 9. Thus, she explains that "the ALJ's finding omits a significant limitation demonstrated by the evidence: her need for an assistance device." *Id.* She primarily cites to the emergency room physician "encourag[ing] her to use her walker anytime she was 'up and about'" after falling and sustaining a concussion in April 2022. *Id.*; Tr. 811. Plaintiff also contends that while the ALJ acknowledged that a walker was ordered by Plaintiff's primary care physician and noted that

Plaintiff "refused to use a walker that was prescribed," he ultimately failed to properly consider whether the walker was medically necessary as required by Social Security Ruling (SSR) 96-9p. Pl.'s Br. 10 (citing Tr. 17–19). Because the ALJ made no such finding, and the VE testified "that using a walker would be work-preclusive," Plaintiff concludes that such "harm in the ALJ's error is obvious." *Id.*

In addition, Plaintiff argues that the ALJ failed to consider additional limiting effects, such as Plaintiff's fatigue, which "requires multiple naps throughout the day." *Id.* at 11 (emphasis omitted). Plaintiff asserts that her testimony and "statements in the Function Report plainly contradict the ALJ's RFC." *Id.* at 13. According to Plaintiff, she is unable to make it through most days without needing significant amounts of rest, which is "plainly inconsistent with [the] SSA's definition of the ability to work . . . on a sustained, full-time, competitive basis." *Id.* at 13–14 (emphasis omitted). While the ALJ found that Plaintiff could perform "light work . . . requiring 'a good deal' of standing/walking, [f]or about 6 hours," Plaintiff avers her "significant standing/walking limitations more closely resemble the ability to perform sedentary work . . . requiring 'very little' standing/walking." *Id.* at 14 (emphasis omitted). Moreover, Plaintiff's "ability to perform sporadic daily activities does not equate with an ability to work an eight-hour workday." *Id.* at 18. Plaintiff contends that because the ALJ did not properly consider Plaintiff's need to take additional breaks due to fatigue and hand-use limitations from use of her walker, the ALJ erroneously concluded Plaintiff could do light rather than sedentary work, which would have resulted in a determination that Plaintiff is disabled. *Id.* at 14–15. Thus, Plaintiff concludes that because the ALJ failed to consider all of Plaintiff's limitations, the decision is not based on substantial evidence and must be remanded. *Id.* at 18–19.

Conversely, the Commissioner asserts that the ALJ properly assessed Plaintiff's RFC and did not err in excluding the use of a walker because Plaintiff did not show that this device is medically necessary. Def.'s Br. 3–4, ECF No. 17. Rather, the ALJ noted that Plaintiff testified she had only used a seated walker for two weeks at the time of the hearing due to recent falls after her doctor ordered her to do so. *Id.* at 4. The ALJ also considered Dr. Loya's opinion stating that Plaintiff "does not need an assistive device [for] . . . short and long distances and uneven terrain." *Id.* at 5 (quoting Tr. 443). In the Commissioner's view, the ALJ's determination is further supported by two exams in March and July 2021, and an Adult Function Report dated August 12, 2021, all indicating that Plaintiff did not use any assistive devices. *Id.* (citing Tr. 18, 246, 564, 573). It was not until May 2022 when Plaintiff began physical therapy and had a recent history of falling that her doctor ordered a walker. *Id.* (citing Tr. 796–98). Moreover, the Commissioner further notes that "it is unclear if Plaintiff always used [a] walker, as an April 20, 2022, exam noted that she was supposed to use the walker, but did not like it, refused to use it, and used a wall for balance." *Id.* (citing Tr. 809). Plaintiff also testified at the hearing that "she does not always require a walker, as she is able to hold on to a wall." *Id.* (citing Tr. 41). Thus, the Commissioner contends that because of the recency of Plaintiff's use of a walker, it was arguably not medically necessary, and Plaintiff failed to show otherwise. *Id.* at 5–6.

In addition, the Commissioner asserts the ALJ did not need to include Plaintiff's "need[] to nap for 30-minutes at a time four or five times a day" in the RFC because "the evidence does not support the need for frequent breaks." *Id.* at 6–7 (citing Tr. 45–46). The Commissioner avers instead that the July 22, 2021 report shows that she had no fear of falling or trouble standing and walking, and that two of her conditions—diabetes and heart conditions—improved with medical compliance. *Id.* at 7. The Commissioner also points to several medical evaluations assessing these

conditions and suggests that Plaintiff's fatigue is caused by noncompliance with her medications, which "weighs against a finding that the condition is disabling." *See id.* 7–8 (citing *Villa*, 895 F.2d at 1024). Finally, the ALJ accounted for Dr. Loya's opinion, which did not support Plaintiff's need for frequent naps or an assistive device, and Dennis Pacl, M.D. and Kim Rowlands, M.D.'s opinions, which both found that Plaintiff could perform a "reduced range of light work" and stand and/or walk for six hours a day. *Id.* at 8.

In her reply, Plaintiff maintains she never claimed that a prescription for a walker determined medical necessity, but that it is compelling evidence, especially when coupled with Plaintiff's well-documented pain and balance issues. Pl.'s Reply 1–2, ECF No. 18. Plaintiff argues that Commissioner's contention that Plaintiff does not always use her walker and prefers to instead use a wall to balance on occasions "are distinctions without differences" because "there is no requirement that an impairment . . . be ever-present." *Id.* at 3. Rather, the focus is on "the claimant's ability to work." *Id.* In addition, the Plaintiff's use of a "functionally equivalent method of leaning on objects, rather than using her walker" does not support that her walker is not medically necessary. *Id.*

### B. The ALJ's RFC determination is supported by substantial evidence.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2); *see* 20 C.F.R. § 416.913(a)(2). The ALJ evaluates every medical opinion regardless of its source but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a)(3), 404.1520c(a), 416.920(a)(3), 416.920c(a).[3]

Under the regulations, the ALJ should review the following factors in evaluating a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). In his decision, however, an ALJ need only specifically address two factors: the supportability of a medical opinion and the consistency of that opinion—i.e., factors one and two. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support . . . her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." §§ 404.1520c(c)(1), 416.920c(c)(1). Concerning consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff generally argues that Dr. Loya's opinion is consistent with Plaintiff's self-described limitations but the ALJ's evaluation of that opinion is "unsupported" and "internally inconsistent." Pl.'s Br. 16. More specifically, she contends that the ALJ erred by improperly discounting components of Dr. Loya's opinion that are more favorable to Plaintiff, and failing to explain why he was not crediting those portions of the opinion. *Id.* In addition, Plaintiff asserts the ALJ's RFC determination is flawed because he did not "make findings as to whether the walker

---

[3] Plaintiff filed her application after March 27, 2017; therefore, § 404.1520c and § 416.920c apply.

was medically necessary" or consider limitations based on her use of an assistive device. *Id.* at 10. All of these purported errors, Plaintiff alleges, require remand. *Id.* at 19.

### 1. *The ALJ did not err in analyzing Plaintiff's use of an assistive device.*

Plaintiff argues that she requires a walker for balance and mobility, demonstrating her significant limitations to lift and carry objects, and walk or stand up to six hours a day. *Id.* at 9. Thus, she avers that the ALJ erred by not including her need for an assistive device in the RFC determination. *Id.* She contends there is ample evidence showing it is a necessity because (1) it was prescribed, (2) another doctor "encouraged" her to use it, and (3) Plaintiff testified that she could not get up without holding onto the walker or wall. *Id.* at 9–10; *see* Tr. 41, 811. The Commissioner counters that the ALJ did not err in excluding the use of a walker because Plaintiff did not show that this device is medically necessary. Def.'s Br. 3–4. Rather, the Commissioner explains that because Plaintiff had only used a seated walker for two weeks at the time of the hearing and several of the medical records noted that Plaintiff either did not need an assistive device or chose not to use one, she did not demonstrate that she required an assistive device to ambulate. *Id.* at 4–6 (citing Tr. 18, 246, 443, 564, 573).

An ALJ need not consider a claimant's use of an assistive device unless it is "medically required." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). That is, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*

The Fifth Circuit has not clarified the specific type of "medical documentation" necessary to establish the need for an assistive device. *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL

909618, at *3 (S.D. Miss. Feb. 1, 2021), *R. & R. adopted by* 2021 WL 754833 (S.D. Miss. Feb. 26, 2021). But "several circuits have elaborated and expounded on what documentation is needed in order for a [p]laintiff to show medical necessity"—e.g., an "unambiguous opinion from a physician" describing when the device is medically necessary, or documentation "*establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Id.* (quoting *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012), and *Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009)). Ultimately, the ALJ "must always consider the particular facts of a case" in evaluating the effect a claimant's use of an assistive device has on her ability to work. SSR 96-9p, 1996 WL 374185, at *7

Here, the records conflict as to the necessity of a walker. The ALJ noted that while Plaintiff testified she uses a seated walker for balance and ambulation, her primary care physician had prescribed it only about two weeks before the hearing after Plaintiff fell.[4] Tr. 17–19. Medical staff "encourage[d] [Plaintiff] to use her walker when she is up and about." Tr. 811; *see also id.* (giving instruction to "[u]se walker when up and ambulating"). Neither the prescription nor the recommendation, however, specify the circumstances under which Plaintiff needed the walker—e.g., duration, distance, and terrain.

As discussed by the ALJ, evidence from her April 20, 2022 emergency room visit showed that Plaintiff "was supposed to use the walker, but did not like it, refused to use it, and [instead] used a wall for balance." Tr. 19. On May 2, 2022, twelve days removed from the emergency room visit and only ten days before the administrative hearing, Plaintiff presented to a physical

---

[4] Plaintiff's testimony and the records are unclear as to who, if anyone, prescribed the device. *See* Tr. 41–42 (indicating that "[t]he doctor [she saw]" prescribed the walker, but failing to recall the doctor's name and only remembering that the doctor is "here in Post, [at] the clinic"). The records indicate that the emergency room family nurse practitioner "encourage[d] her to use her walker," and notes from shortly after the emergency room visit at the physical therapy clinic in Post show that Plaintiff's "PCP . . . recently ordered patient a walker." *See* Tr. 798, 811. Despite the lack of evidence showing an actual prescription, the ALJ appears to have credited Plaintiff's testimony that her PCP prescribed the walker. *See* Tr. 18–19, 41–42.

11

therapy appointment "without use of an assistive device." Tr. 800. The ALJ also reviewed several exams from 2020 and 2021, including one by Dr. Loya, and observed that Plaintiff did not require an assistive device and had a "steady and symmetric gait." Tr. 18–20. Lastly, the ALJ considered Plaintiff's own testimony, stating "[she] can hold on to a wall" if she does not use her walker but cannot stand or walk without one of the two. Tr. 19, 41. Ultimately, the ALJ concluded that given Plaintiff's refusal to use the walker regularly, along with ample evidence in the records stating that she did not require or refused to use one, Plaintiff could perform "light work with postural and environmental restrictions" despite her severe impairments. Tr. 18–21.

In sum, the records do not show that Plaintiff's use of a walker is medically necessary. Thus, Plaintiff has not met her burden of showing that the ALJ erred by not including her use of a walker in formulating the RFC, and substantial evidence supports that determination. *See, e.g., Terry v. Kijakazi*, No. 4:22-cv-00096, 2023 WL 2386749, at *5 (S.D. Tex. Mar. 6, 2023) ("Without a showing that the assistive device was medically necessary, the ALJ was not required to consider [plaintiff's] use of a cane or walker in her RFC assessment."), *R. & R. adopted by* 2023 WL 2614627 (S.D. Tex. Mar. 22, 2023); *Bivens v. Saul*, No. 3:20-CV-1904-K-BH, 2022 WL 869687, at *11 (N.D. Tex. Mar. 7, 2022) ("Because the records were inconsistent as to whether she used a cane to ambulate and do not show that the cane was medically necessary, [p]laintiff failed to meet her burden to show that she required a cane to ambulate."), *R. & R. adopted by* 2022 WL 865903 (N.D. Tex. Mar. 22, 2022); *March v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-cv-1716, 2008 WL 5273725, at *3 (W.D. La. Dec. 16, 2008) (finding that although "the ALJ did not make an explicit determination that [plaintiff's] use of a walker was not medically necessary," he did note "that the record showed that [p]laintiff 'did not actually use the wheeled walker'" and that determination was supported by substantial evidence); *Cabrera v. Comm'r of Soc. Sec.*, No. 2:20-CV-227, 2021

WL 3772403, at *8–9 (S.D. Tex. Aug. 25, 2021) (affirming ALJ's omission of an assistive device in formulating plaintiff's RFC "despite [p]laintiff's reported periodic walker use and . . . testimony regarding her ability to ambulate," because plaintiff also testified that "she does not use the walker in her home, instead using walls" or other things to balance on, and records otherwise supported that she did not require an assistive device for ambulation and had "a normal, steady gait"). Because the ALJ considered whether Plaintiff's walker was medically necessary and his conclusion that Plaintiff does not require a walker is supported by substantial evidence, the undersigned recommends the district judge affirm the ALJ's opinion.

### 2. *The ALJ's RFC determination is consistent with Dr. Loya's medical opinion.*

In Plaintiff's view, the ALJ erred when he credited Dr. Loya's opinion as "consistent with the overall evidence and somewhat persuasive," but failed to explain how the doctor's standing and walking limitations, "which plainly contradict the ALJ's RFC, [were] . . . the only part of the report he did not credit." *Id.* at 16. Plaintiff asserts that because Dr. Loya's opinion and Plaintiff's self-described limitations are consistent with significant standing/walking limitations, the ALJ's opinion is inconsistent with the finding that Plaintiff can perform light work. *Id.* Essentially, Plaintiff argues that (1) the ALJ's opinion is not consistent with Dr. Loya's opinion that Plaintiff has standing limitations due to fatigue, and (2) the ALJ erred by failing to explain why he was not crediting that portion of Dr. Loya's opinion.

Dr. Loya evaluated Plaintiff on October 17, 2020, and determined that she "had a steady and symmetric gait." Tr. 438, 441. Plaintiff "did not come [to the appointment] with an assistive device or prosthetic." Tr. 441. He also noted that she "was able to squat and rise from that position with ease[,] . . . rise from a sitting position without assistance and could get up and down from the exam table with ease. Tr. 442. Plaintiff's "[t]andem walking was normal and [she] . . . could stand

and hop on one foot bilaterally." *Id.* Lastly, Dr. Loya opined that Plaintiff has "limitations with standing due to shortness of breath and fatigue and walking due to shortness of breath." Tr. 443.

"[T]he ALJ is required to 'explain how he considered the supportability and consistency factors for a medical source's medical opinions . . . in [plaintiff's] determination or decision.'" *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (citation and alteration omitted). Courts require the ALJ to establish "a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Edwards v. Kijakazi*, 4:22-cv-00520, 2023 WL 2386748, at *3 (S.D. Tex. Mar. 6, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021)), *R. & R. adopted by* 2023 WL 2616018 (S.D. Tex. Mar. 22, 2023). The "ALJ's persuasiveness discussion is critical to his analysis and . . . he must provide the [c]ourt with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive." *Cooley*, 587 F. Supp. 3d at 499 (quoting *Pearson*, 2021 WL 3708047, at *5). An ALJ conducts an "adequate discussion" if he "enables . . . the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence." *Id.* (citations omitted).

The ALJ considered both the supportability and consistency of Dr. Loya's opinion. The ALJ discussed the records from several exams occurring over the course of approximately two years, including the opinions of four doctors—Loya, Pacl, Rowlands, and Sadovnik. Tr. 18–21. He found Dr. Loya's opinion "somewhat persuasive" because it "is supported by exam findings showing the [Plaintiff] had a steady and symmetric gait, used no assistive device, had no muscle spasms, was 5/5 muscle strength, no joint swelling, was able to squat and rise, and was able to walk heels and toes." Tr. 19. The ALJ also noted the "opinion is consistent with overall evidence in the case showing the claimant has chronic diabetic and heart conditions that show improvement

with medical compliance." *Id.* Based on this opinion and other evidence in the record, the ALJ concluded that Plaintiff could perform "light work with postural and environmental restrictions due to her coronary artery disease, Type 2 diabetes . . . , bilateral lower extremity edema, asthma," and heart conditions. Tr. 21.

Contrary to Plaintiff's assertion, the ALJ did not discount Dr. Loya's opinion that Plaintiff has standing and walking limitations from her shortness of breath and fatigue. Instead, the ALJ similarly concluded that Plaintiff is "limited to a range of light work with" additional restrictions because of the conditions that cause her fatigue and shortness of breath, including diabetes, asthma, and heart conditions. Tr. 21, 438–39; *see Halter ex rel. Halter v. Comm'r, SSA*, No. 4:21-CV-00262-SDJ-CAN, 2022 WL 7353200, at *13 (E.D. Tex. July 7, 2022) (finding the ALJ's determination supported by substantial evidence because he did not "reject [the doctor's] objective medical findings" as plaintiff suggested, but rather "relied on [the doctor's] objective medical findings that suggest[ed] mild to moderate limitations, [and] thus support[ed] the RFC with findings by a treating physician" (citation and emphasis omitted)), *R. & R. adopted by* 2022 WL 4587845 (E.D. Tex. Sept. 29, 2022). Although the undersigned agrees the ALJ could have established a stronger logic bridge between the evidence and his persuasiveness finding, he nevertheless found that Dr. Loya's opinion was supported by specific exam findings (e.g., a steady and symmetric gait, used no assistive device, 5/5 muscle strength, able to squat and rise, and able to walk heels and toes) while also suffering from diabetes, asthma and heart conditions, and was consistent with medical evidence regarding those underlying chronic conditions.[5] Tr. 19. Thus,

---

[5] Plaintiff argues the ALJ's conclusion she has standing limitations but can still perform light work with restrictions, is inconsistent with Dr. Loya's opinion because Loya generally concluded that Plaintiff has standing limitations due to her fatigue. *See* Tr. 19, 443. In doing so, however, Plaintiff attempts to capitalize on Dr. Loya's generalized conclusion that she has standing limitations, while ignoring substantial evidence found elsewhere in the record and consistent with the RFC, e.g., Dr. Pacl and Rowlands' specific opinions that Plaintiff is limited to six hours of standing or walking per day. *See* Tr. 19–20, 62, 74. Plaintiff cannot cherry-pick portions of the record, while ignoring others, to demonstrate inconsistency in the ALJ's opinion. But in any event, the ALJ's conclusion that Plaintiff can work,

because the ALJ properly considered both the required factors—supportability and consistency—substantial evidence supports his conclusion, and remand is not required on this issue. *See Eason v. Comm'r, SSA*, No. 6:21cv173, 2022 WL 2183132, at *8 (E.D. Tex. May 21, 2022) ("[T]he ALJ addressed both the supportability and consistency of [the doctor's] opinions and identified specific medical evidence to support her conclusions. Plaintiff has not shown that the ALJ failed to properly consider the opinion of [the doctor] . . . and her finding is supported by substantial evidence."), *R. & R. adopted by* 2022 WL 2182696 (E.D. Tex. June 16, 2022); *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194-HSO-RPM, 2021 WL 7541415, at *8 (S.D. Miss. Dec. 17, 2021) (determining the ALJ's explanation of his persuasiveness finding was legally sufficient where he "relied on medical records spanning years from six different sources that consistently indicated" plaintiff's disposition, "reported activities, and documented social interactions" and "incorporated [those findings] into his persuasiveness evaluation"), *R. & R. adopted by* 2022 WL 566175 (S.D. Miss. Feb. 24, 2022).

### C. The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff maintains that the ALJ's credibility assessment is defective because "if Plaintiff's description is properly credited, she is 'disabled.'" Pl.'s Br. 13 (emphasis omitted). Plaintiff asserts that the ALJ is required to first make a threshold finding based on the objective medical evidence that supports Plaintiff's described limitations, and the ALJ found in her favor at this step. *Id.* at 11–12. Second, the ALJ must assess "whether the claimant's description of the intensity, persistence, and limiting effects of [her] symptoms are consistent with" and supported by the record. *Id.* at 12. According to Plaintiff, her self-described limitations are more consistent with the ability to perform sedentary work, not light work. *Id.* at 13–14. Plaintiff contends such self-

---

with restrictions due to conditions that cause fatigue, is supported by the record and consistent with Dr. Loya's general opinion that Plaintiff has "limitations with standing due to shortness of breath and fatigue." Tr. 21, 443.

described limitations are supported by the record and should have been credited. *Id.* at 15. The Commissioner, however, avers that medical records do not support Plaintiff's need for frequent breaks or naps and that her fatigue symptoms improved with medication compliance, and thus, the ALJ did not need to credit Plaintiff's testimony. Def.'s Br. 6–9.

The ALJ is in the best position to assess a claimant's credibility. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). "The Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citations omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the . . . record." Tr. 17. Specifically, the ALJ noted that Plaintiff's testimony regarding her shortness of breath and fatigue and "uncontrolled diabetes and chronic heart failure" was inconsistent because: (1) her heart conditions "are treated with medication and a recent echocardiogram showed good results"; (2) she has diabetes but "is not medically compliant with her medication or treatment which causes issues with her health"; (3) she "refused to use a walker that was prescribed to her"; and (4) in her October 2020 exam, she "reported she could cook, clean, do housework, walk, shop, do laundry, sweep, wash dishes, drive, and make the bed." Tr. 19. As discussed earlier, the record supports a finding that Plaintiff's use of a walker is not medically necessary. *See supra* IV.B.1. Moreover, the ALJ pointed to numerous records supporting his finding that Plaintiff's testimony about her symptoms is inconsistent with the record given that her conditions are aggravated by her refusal to comply with prescribed treatment. *See* Tr. 18 (noting that Plaintiff was admitted to the hospital in February 2020 with increased sugar levels and admitted that she stopped taking metformin (citing Tr. 404–17)); *id.* ("In March 2020, claimant was admitted for bronchitis and reported a blood sugar of 423

17

but stated she was taking her medication irregularly" (citing Tr. 339–43)); *id.* ("A February 2021 exam noted the claimant was not interested in controlling diabetes" (quoting Tr. 463)). Lastly, the ALJ discussed Plaintiff's own previous explanation of her subjective complaints in an October 2020 exam, describing her ability to accomplish several household chores and other tasks. Tr. 19. Thus, despite Plaintiff's testimony about her fatigue, the objective evidence supports that Plaintiff is not as limited as described or compliant with her prescribed medications. *See Lewis v. Barnhart*, 460 F. Supp. 2d 771, 786 (S.D. Tex. 2006) (affirming ALJ's finding that plaintiff's subjective complaints were "not fully credible but exaggerated" because while the record supported that plaintiff suffered from pain, it did "not support a finding that [plaintiff's] pain [wa]s constant, unremitting, and wholly unresponsive to therapeutic treatment"); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991) (per curiam) (concluding that because "[t]he ALJ considered [plaintiff]'s subjective complaints of pain . . . [and] there was sufficient medical evidence in the record to support" his decision, the district court did not err in affirming the ALJ's decision).

In sum, the Court finds the ALJ did not err in formulating Plaintiff's RFC, and substantial evidence supports the ALJ's conclusion. But even if Plaintiff has established error, "[t]o constitute reversible error and warrant remand" she "must [also] show that she suffered prejudice due to the ALJ's . . . RFC determination." *Cruz v. Kijakazi*, No. SA-21-CV-01246-ESC, 2022 WL 17039318, at *4 (W.D. Tex. Nov. 17, 2022). Plaintiff argues that if the ALJ properly credited her testimony, he would have determined that she is disabled because she is either unable to perform light work or, able to perform light work but unable to perform relevant past work because of additional limitations. *See* Pl.'s Br. 15. But Plaintiff does not point to any *objective* medical evidence supporting a conclusion that the RFC failed to account for her limitations. *See Parker v. Barnhart*, 431 F. Supp. 2d 665, 674 (E.D. Tex. 2006) (finding no merit to plaintiff's argument that

he was prejudiced by the ALJ's allegedly improper credibility assessment because the ALJ "acted properly and within his discretion when evaluating and rejecting plaintiff's subjective testimony" and "committed no error when" determining plaintiff's RFC); *Prince v. Barnhart*, 418 F. Supp. 2d 863, 874 (E.D. Tex. 2005) (concluding there was "no aspect of [plaintiff's] subjective testimony that [the] ALJ . . . could not have articulated some basis for not fully crediting" and therefore, the ALJ committed no reversible error for not making an explicit credibility determination because he likely would have reached the same conclusion based on the evidence). As such, she has not established the ALJ committed reversible error.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

## VI. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 27, 2023.

                                              D. GORDON BRYANT, JR.
                                              UNITED STATES MAGISTRATE JUDGE